UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE: AESCULAP IMPLANT
SYSTEMS LLC, ET AL.

CASE NO. 2:19-CV-14421
CASE NO. 2:19-CV-14423
CASE NO. 2:19-CV-14425
CASE NO. 2:19-CV-14426
CASE NO. 2:19-CV-14427
CASE NO. 2:19-CV-14428
CASE NO. 2:19-CV-14429
CASE NO. 2:19-CV-14430
CASE NO. 2:19-CV-14431
CASE NO. 2:19-CV-14432
CASE NO. 2:19-CV-14433
CASE NO. 2:19-CV-14434
CASE NO. 2:19-CV-14435
CASE NO. 2:19-CV-14436
CASE NO. 2:19-CV-14437
CASE NO. 2:19-CV-14438
CASE NO. 2:19-CV-14439

_____/

## OMNIBUS ORDER REMANDING CASES

This cause is before the Court on Motions to Remand filed by Plaintiffs in each of the above-captioned cases. Defendant Aesculap Implant Systems, LLC ("Aesculap"), has filed a response to each Motion. The Court has considered the Motions and the record in each case and is otherwise fully advised in the premises. For the reasons that follow, the Motions are GRANTED.

### I. BACKGROUND

Plaintiffs in each case allege that they were injured by an orthopedic knee-replacement implant manufactured by Aesculap, a Delaware corporation with its principal place of business in Pennsylvania. They allege that the implant's Teflon-like coating prevents a chemical bond with the patient's bone, instead requiring a mechanical bond which is prone to fail. This results in pain

and necessitates a revision surgery. Plaintiffs further allege that Defendants Bended Knee Joint Technologies, LLC ("Bended Knee") and Michael McGee, both Florida citizens, promoted, marketed, sold, and/or distributed the implants for Aesculap within the state of Florida. Plaintiffs sue all Defendants under strict-liability theories of failure to warn and defective design, negligence, and negligent misrepresentation.

All cases were filed in the Nineteenth Judicial Circuit Court of Indian River, Florida. Aesculap removed the cases, alleging that Bended Knee and McGee were fraudulently joined to defeat diversity jurisdiction. Plaintiffs move for remand, arguing that Bended Knee and McGee are proper parties to these actions.

## II. LEGAL STANDARD

Diversity jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity; "all plaintiffs must be diverse from all defendants." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999). Fraudulent joinder is a doctrine under which courts must ignore a non-diverse defendant and deny a motion to remand to state court if it is established that the non-diverse defendant was included solely to defeat diversity jurisdiction. *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). To establish fraudulent joinder, the removing party must prove by clear and convincing evidence that there is no possibility that the plaintiff can state a claim against the non-diverse defendant. *Id.* Under this "heavy" burden, courts must remand if the plaintiff "states even a colorable claim against the resident defendant." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). A ruling on fraudulent joinder "must be based on the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties." *Id.* "[T]he district court must evaluate the factual allegations in the light most favorable

to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

### III. ANALYSIS

#### a. Strict Products Liability

To state a claim for strict liability, the plaintiff must show: (1) the defendant sold a product in a defective condition unreasonably dangerous to the user, (2) the defendant is engaged in the business of selling such a product, (3) the product is expected to and does reach the user without substantial change in its condition, and (4) the user or her property is physically harmed as a result. *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 84 (Fla. 1976). The doctrine of strict liability is based on the principle that "those entities within a product's distributive chain 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even an undetectable product defect." *Samuel Friedland Family Enter. v. Amoroso*, 630 So. 2d 1067, 1068 (Fla. 1994). Although traditionally applied to manufacturers, "Florida courts have expanded the doctrine of strict liability to others in the distributive chain including retailers, wholesalers, and distributors." *Id.* Plaintiffs allege that Bended Knee and McGee act as distributors with respect to the implants at issue as the basis for their strict-liability claim against these Defendants.

Although Florida courts have considered numerous factors in determining whether a defendant is part of a product's distributive chain, the most important is the degree of control the defendant exercised over the product. Although "a plaintiff need not prove the defendant was ever in physical possession," the defendant must have "possessed some element of 'control over the allegedly defective product.'" *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1379 (M.D. Fla. 2009) (quoting *Rivera v. Baby Trend, Inc.*, 914 So. 2d 1102, 1104 (Fla. Dist. Ct. App.

3

2005)). Other considerations include "whether the person or entity placed the product in the stream of commerce, is in a position to control the risk of harm a product might cause once put into the stream of commerce, or either created or assumed the risk of harm for the defective product." *Rivera*, 914 So. 2d at 1104 (citation and internal quotation marks omitted).

In *Rivera*, a provider of baby strollers (Baby Trend) was properly sued under a strict-liability theory, even though it was neither a manufacturer nor a retailer. Concluding that Baby Trend was "in the distributive chain," the court noted that it was "the actual seller of the product, marketed the product under the Baby Trend name, and accepted payment for the product." *Id.* at 1104–05. Baby Trend also exercised "some control over the design of the product to ensure compliance with safety regulations." *Id.* at 1105. On the other hand, a manufacturer's representative was not part of the distributive chain in *Siemens Energy & Automation, Inc. v. Medina*. There, the defendant provided printed specifications to the purchaser of an electric conductor, and there was some evidence that the defendant altered certain price information on the specifications form. *Siemens Ener. & Automation, Inc. v. Medina*, 719 So. 2d 312, 314 (Fla. Dist. Ct. App. 1998). The Court concluded that the defendant was not a distributor but rather was a mere "conduit of information" between the manufacturer and purchaser, and there was no evidence that defendant's act of changing a price term on the specifications sheet "had any causal relationship with the alleged defect." *Id.* at 315. Distributors of medical products may be held strictly liable, but in the medical-device context, "the health care provider is in fact more akin to the consumer or user of the product." *Porter v. Rosenberg*, 650 So. 2d 79, 82 (Fla. Dist. Ct. App. 1995).

b. **Fraudulent Joinder**

Aesculap asserts that McGee, and by extension Bended Knee, is a mere sales representative, not a distributor, and therefore is not within the distributive chain of the implants at issue. Aesculap

4

submitted two declarations in support of that argument. The first is a declaration by McGee, attached to the Notice of Removal in each case. McGee states that he served as a "sales representative" for Aesculap, and he "sold AIS knee implants devices to Sebastian River Medical Center for use by Dr. Omar Hussamy in total and partial knee replacement surgeries," but he never "distributed or sold AIS medical devices directly to patients." McGee Decl. at 1 ¶¶ 3–5. McGee visited doctors' offices to promote Aesculap devices and provided Aesculap's sales literature and product descriptions to doctors, but he did not make any representations beyond what Aesculap authorized and did not make medical decisions or secure consents from patients. *Id.* at 1–2 ¶¶ 6–10. McGee was not involved in the design, manufacture, testing, or approval of the implants. *Id.* at 2–3 ¶¶ 11–21.

The second declaration is by Keith McGrath, Aesculap's Director of Orthopaedic Marketing. His declaration states that Aesculap is the distributor of the implant at issue, not McGee, and that Bended Knee entered into a contract to serve as sales representative for Aesculap, with McGee as sole sales agent. McGrath Decl. at 1 ¶ 3–4.[1] McGrath states that "McGee was permitted to facilitate sales of AIS products only with specific AIS customers identified in the Contract, which included Indian River Medical Center." *Id.* at 1 ¶ 5.[2] AIS retained the right to determine the terms of sale, and invoices were sent to the customer from AIS. *Id.* at 1–2 ¶ 6. The declaration does not attach the contract between Aesculap and McGee/Bended Knee.

---

[1] Plaintiffs attach to their Motions an exhibit including a screenshot of McGee's LinkedIn profile, which describes McGee/Bended Knee as the "exclusive distributor of Aesculap Implant Systems for Brevard, Indian River, St. Lucie, Martin and Palm Beach counties." Ex. A, Pls.' Mot. Remand. The Court declines to base its decision on this exhibit and notes it only for the sake of completeness.

[2] The McGee Declaration in each case refers to the "Sebastian River Medical Center" while the McGrath Declaration in each case refers to the "Indian River Medical Center." Certain plaintiffs underwent surgery at Indian River Medical Center, while others were at Sebastian River Medical Center. The Court construes the discrepancy in the declarations as a clerical error, such that each declaration was meant to reference the medical facility appropriate to the complaint of the case in which the declaration was filed.

5

The question is whether Aesculap has shown by clear and convincing evidence that there is no possibility a Florida court could conclude that Bended Knee/McGee are part of the distributive chain of the knee implants. The Court concludes that Plaintiffs have stated a colorable claim under Florida law, and therefore the Court must remand the cases.

Several federal courts have considered whether a defendant is within a product's distributive chain for purposes of fraudulent joinder. In *Martin v. Medtronic*, the court found that there was no fraudulent joinder as to a company who took patients' orders and payment for insulin pumps, routed the orders to third parties who possessed the pumps at issue, and made a profit from the sales. *Martin v. Medtronic*, No. 5:11-cv-144/RS-CJK, 2011 WL 243318, at *1 (N.D. Fla. June 22, 2011). In *Barnes v. Bayside Orthopaedics, Inc.*, the court concluded that a provider of orthopaedic devices was not fraudulently joined, noting that it "marketed and promoted the product at issue" in exchange for a commission, which "places it in the chain of distribution to the surgeons and the general public." *Barnes v. Bayside Orthopaedics, Inc.*, No. 8:11-cv-2827-T-30EAJ, 2012 WL 162368, at *2 (M.D. Fla. Jan. 19, 2012). Finally, in *In re: Biomet M2a Magnum Hip Implant Products Liability Litigation*, the court concluded that defendants (who the court called "Distributors") were not fraudulently joined:

> [T]he plaintiffs have alleged a sufficient element of control to state a colorable claim against the Distributors under Florida law. All three plaintiffs allege unequivocally that the Distributors placed the implants in the stream of commerce by arranging their sale to hospitals and doctors. According to the complaints, the Distributors acted as Biomet's local representatives with regard to the implants in question, selling, marketing, and distributing the implants for profit. That the Distributors had no hand in designing the implants and might not have known of their defects isn't dispositive. While the plaintiffs don't allege that the Distributors ever took title to the implants or physically possessed them, Biomet doesn't cite any Florida authority suggesting that taking title is dispositive of – or even relevant to – to the question of whether a retailer or distributor had sufficient control over the product to be held strictly liable for its defects. Instead, taking an active role in marketing and selling a product appears to be enough for Florida courts.

MDL 2391, 2016 WL 3901366, at *6 (N.D. Ind. July 18, 2016).

Aesculap relies primarily on *Wilssens v. Medtronic, Inc.* to argue that mere salespersons are not part of the distributive chain. No. 09-60792-CIV, 2009 WL 9151079 (S.D. Fla. July 23, 2009). There, the non-diverse defendant was a sales representative for a medical-device manufacturer. *Id.* at *4. The plaintiff alleged that the sales representative was present at the time plaintiff was implanted with the device and helped program the device, and therefore that she could be held strictly liable for products liability. *Id.* The Court rejected that theory, not on the basis that she held the title of sales representative but because the plaintiff's allegations regarding her role in the implantation procedure did not place her within the distributive chain of the device. *Id.* at *8.

In each of these cases, the court looked beyond labels such as "sales representative" and "distributor" to the defendant's actual involvement in the product's distribution. Thus, whether Aesculap **considers** McGee/Bended knee distributors is of limited probative value. What matters is whether they are functioning as mere conduits of information between the medical centers and Aesculap or whether McGee/Bended Knee exercise a sufficient degree of control over the implants' distribution to be part of the distributive chain. The Court has not been presented with clear and convincing evidence that McGee/Bended Knee are mere conduits of information.

Here, the declarations clearly establish that McGee/Bended Knee had virtually no involvement with the product's development on the back end, nor did they have any significant interaction with patients. But strict liability requires only that they be within the distributive chain, and the declarations are vague with respect to the logistics of sales to the medical centers. McGee states that he "sold" the implants to the medical center, while McGrath states that McGee "facilitated sales." A contract between Aesculap and McGee apparently afforded McGee little to no latitude to deviate from Aesculap's sales literature and limited his ability to alter the terms of

7

sale. However, the declarations neither attach the contract nor describe it in more than passing. The declarations are silent as to who takes and routes the medical center's order, who maintains the inventory of the products at issue, how the product reaches the medical center, and the manner of McGee's compensation—all of which are relevant indicia of control under Florida law.

By way of contrast, consider the proof offered in *Devore*, where the removing party included an affidavit supported by documentary evidence which tracked a hip implant's shipment from a manufacturing facility to the defendant's headquarters to a warehouse facility to a hospital, where it was then implanted in a patient. *Devore*, 658 F. Supp. 2d at 1374. In finding fraudulent joinder, the court concluded that this was clear and convincing evidence that the non-diverse defendant played no part in the distributive chain. *Id.* at 1379. This is the sort of evidence that would ordinarily be required to overcome the imposing legal standard of fraudulent joinder.

**c. Fees and Costs**

In remanding a case, courts may order the payment of attorney's fees and costs "incurred as a result of the removal." 28 U.S.C. § 1447(c). However, courts should do so only when the removing party lacked "an objectively reasonable basis" to remove the case. *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). The Court finds that there was an objectively reasonable basis for removal and denies Plaintiffs' request for fees and costs.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows**:**

1. Plaintiffs' Motions to Remand are **GRANTED**.

2. The cases are **REMANDED** to the Nineteenth Judicial Circuit Court in and for Indian River County, Florida.

3. The Clerk of Court is instructed to **CLOSE** the above-captioned cases, terminating all deadlines and denying all pending motions as moot.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 30th day of December, 2019.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to: Counsel of Record